UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

Civil Docket Number: 04 10908 WGY

| | |
|---|---|
| SUSAN GALLAGHER, Individually and as Co-Administratrix of the Estate of William J. Gallagher, JOHN J. GALLAGHER, Individually and as Co-Administrator of the Estate of William J. Gallagher, HALEY GALLAGHER, Individually, KELLY GALLAGHER, Individually,<br>    PLAINTIFFS<br><br>v.<br><br>NICHOLAS COSTELLO, in his capacity as Mayor of the City of Amesbury, DR. STEPHEN J. GERBER, in his capacity as Superintendent of Schools, RAYMOND A. TIEZZI, in his capacity as Principal of the Amesbury Middle School, JOAN LANDERS, in her capacity as the Amesbury School District's Special Education Director, MARGARET FURLONG, Individually and in her capacity as Home Economics Teacher at the Amesbury Middle School, KATHERINE J. ANKIEWICZ, Individually and in her capacity as Special Need's Aide in the Amesbury Middle School,<br>    DEFENDANTS | **FIRST AMENDED COMPLAINT** |

PLAINTIFFS' CLAIM TRIAL BY JURY

This action brought pursuant to G.L.c. 258, § 2 seeking relief from the negligence of the City of Amesbury, the Independent School District of Amesbury, the Amesbury Middle School and it's Principal, Special Education Director, Teacher and Teacher's Aide, which in pertinent part states:

"Public employees shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission or any public employee while acting within the scope of his

1

office or employment, in same manner and to the same extent as a private individual under like circumstances....."

## PARTIES

1. The Plaintiff, Susan Gallagher, is an individual residing in Amesbury, Massachusetts and is the mother of William J. Gallagher. She is also the Co-Administratrix of the Estate of William J. Gallagher, Essex Probate and Family Court, Docket Number 01P3201VA1.

2. The Plaintiff, John J. Gallagher, is an individual residing in Amesbury, Massachusetts and is the father of William J. Gallagher. He is also the Co-Administrator of the Estate of William J. Gallagher, Essex Probate and Family Court, Docket Number 01P3201VA1.

3. The Plaintiff, William J. Gallagher, deceased, was the son of John and Susan Gallagher and the brother of Haley and Kelly Gallagher. Bill died on May 9, 2001.

4. The Plaintiff, Haley Gallagher, is an individual residing in Amesbury, Massachusetts and is the sister of William J. Gallagher.

5. The Plaintiff, Kelly Gallagher, is an individual residing in Amesbury, Massachusetts and is the sister of William J. Gallagher.

6. The City of Amesbury, is a public employer as set forth in G.L.c. 258, § 1, *et seq.*

7. The Defendant, Nicholas Costello, Mayor of the City of Amesbury, is the head of the municipality governed by the laws of the Commonwealth of Massachusetts, and by statute a necessary party.

8. The Defendant, Dr. Stephen J. Gerber, is the Superintendent of Schools for the Independent School District of Amesbury, governed by the laws of the Commonwealth of Massachusetts.

9. The Defendant, Raymond A. Tiezzi, is the Principal of the Amesbury Middle School, Amesbury, Massachusetts, governed by the laws of the Commonwealth of Massachusetts.

10. The Defendant, Joan Landers, is the Director of Special Education at the Amesbury Middle School, governed by the laws of the Commonwealth of Massachusetts.

11. The Defendant, Margaret Furlong, is an individual, the Home Economics Teacher at the Amesbury Middle School, Amesbury, Massachusetts, and employee of the City of Amesbury, governed by the laws of the Commonwealth of Massachusetts.

12. The Defendant Katherine J. Ankiewicz, is an individual and is Special Needs Aide at the

Amesbury Middle School, Amesbury, Massachusetts, and employee of the City of Amesbury, governed by the laws of the Commonwealth of Massachusetts.

## FACTUAL ALLEGATIONS

13. William J. Gallagher ("Bill") was a 16 year old special needs student at the Amesbury Middle School, Amesbury, Massachusetts, covered by the Americans with Disabilities Act (42 U.S.C., § 12132); The Rehabilitation Act of 1973, 29 U.S.C., § 504; The Civil Rights Act, (42 U.S.C., § 1983); The Individuals with Disabilities Education Act, 20 U.S.C., § 1400, (IDEA); G.L.c. 71(b); and G.L.c. 258, *et seq*.

14. Bill had been a student in the Amesbury school system since 1990.

15. Throughout Bill's tenure in the Amesbury school system, and in particular at the Amesbury Middle School, his parents were asked to provide medical information and records regarding Bill's health. (See, Exhibit A)

16. Upon the request of the Amesbury school system, and in particular the Amesbury Middle School, Bill's parents provided the requested medical information and records to the Amesbury school system. (See, Exhibit A)

17. On numerous occasions, as early as 1990 and as recent as 2000, Bill's parents indicated on his medical records that he was "severely allergic to nuts and seeds". (See, Exhibit A)

18. The Defendant, Margaret Furlong ("Furlong"), Bill's teacher was an employee and agent of the Amesbury Middle School, the Amesbury school system and the City of Amesbury, and knew of Bill's severe allergies to nuts and seeds and further knew, that the ingesting of these products would likely result in Bill's death.

19. The Defendant, Kathleen J. Ankiewicz, ("Ankiewicz") Furlong's Aide, was an employee and agent of the Amesbury Middle School, the Amesbury school system and the City of Amesbury, and knew of Bill's severe allergies to nuts and seeds and further knew, that the ingesting of these products would likely result in Bill's death.

20. On or about May 9, 2001, while attending a regularly scheduled home economics/life skills/cooking class, at the Amesbury Middle School ("School"), contrary to stated, obvious and otherwise cautionary documentation, and contrary to their knowledge, Bill was fed by Furlong

3

and Ankiewicz and by such feeding he was caused to ingest a variety of foods containing nut and seed ingredients, which earlier medical records, provided to the School, by his parents, indicated clearly and without ambiguity that he was severely allergic to such nuts and seeds, and that such facts were known by said Furlong and Ankiewicz.

21. As a direct result of the feeding and ingesting of said ingredients, Bill began having trouble breathing and shortly thereafter lost consciousness.

22. A School administrator immediately called Bill's mother, Susan Gallagher ("Sue"), and alerted her to the fact that Bill was not well and that the situation required that she come to the School immediately.

23. Upon arriving at the School, Sue encountered an ambulance parked in front of School, which she parked directly behind. She also observed her son, Bill, being wheeled from the School to the ambulance on a stretcher, while being attended to by EMTs.

24. Sue requested to drive in the ambulance with her son, but was told she could not.

25. Sue got in her car and followed immediately behind the ambulance for the entire ride to the hospital.

26. Sue noted that Bill was positioned on the left side of the ambulance and his EMT attendant was seated to the right side of the ambulance.

27. While following the ambulance Sue had a clear vision of the activity within the ambulance.

28. At some point after leaving the School and before arriving at Anna Jacques Hospital, Newburyport, MA ("Hospital"), Sue noticed the EMT jump from his seated position.

29. Sue observed the EMT assume a bent position over Bill and performing a pumping motion, which Sue believed to be CPR.

30. The EMT continued this activity throughout the remainder of the drive to the Hospital.

31. Upon arriving at the Hospital, Bill was rushed into the emergency room, while EMTs continued to perform emergency treatment to him.

32. Sue followed her son and his medical attendants into the emergency room, where she witnessed the Hospital's emergency medical team treat her son and where she called Bill's father, John J. Gallagher, ("John") to update him of the situation.

33. Although Sue stepped out of the emergency treatment room several times to answer medical

4

personnel's questions, she remained, for the most part, in the treatment room observing her son receive emergency treatment by various hospital personnel.

34. Sue stated numerous times to the emergency personnel not to stop "working" on her son.

35. Bill's father, John, arrived at the Hospital and entered the emergency room where Bill was being treated.

36. John and Sue continued to observe, from Bill's room, the Hospital's emergency personnel perform emergency treatment on Bill.

37. Several minutes after John arrived at the Hospital, while he and Sue watched the Hospital personnel administer emergency treatment to their son, the medical team stopped treating Bill and their son was pronounced dead, while in their presence, at 3:14 p.m. on May 9, 2001.

38. Bill's death, as stated in the Chief Medical Examiner's report, is a direct result of ingesting foods that were cooked by and fed to him by Furlong and Ankiewicz, which contained a variety of nuts at seeds.

39. Bill's sisters, Haley Gallagher ("Haley") and Kelly Gallagher ("Kelly") were in attendance at the School when they heard the ambulance sirens.

40. While in School, Haley and Kelly were told that Bill was taken by ambulance to the Hospital and also learned of his subsequent death.

## COUNT I

### Liability of the City under G.L.c. 258, § 2

**A.  Negligence of Margaret Furlong and Katherine J. Ankiewicz**

The Plaintiffs restate Paragraphs 1 through 40 of the Complaint and incorporate them herein by reference

41. The City of Amesbury, through its Mayor Nicholas Costello, is subject to the Massachusetts Tort Reform Act, G.L.c. 258, § 2, which in pertinent part states:

> "Public employees shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission or any public employee while acting within the scope of his office or employment, in same manner and to the same extent as a private individual under like circumstances....."

5

42. The Defendant, Furlong, is an individual, employee and is the Home Economics Teacher at the Amesbury Middle School, Amesbury, Massachusetts, governed by the laws of the Commonwealth of Massachusetts.

43. The Defendant, Ankiewicz, is an individual, employee and is Special Needs Aide at the Amesbury Middle School, Amesbury, Massachusetts, governed by the laws of the Commonwealth of Massachusetts.

44. On or about May 9, 2001, while attending a regularly scheduled home economics/life skills/cooking class, at the Amesbury Middle School, contrary to stated, obvious and otherwise cautionary documentation, Bill was fed by Furlong and/or Ankiewicz and by such feeding he was caused to ingest a variety of foods containing nut and seed ingredients, which earlier medical records, provided to the school by his parents, indicated clearly and without ambiguity that he was severely allergic to such nuts and seeds, and that such facts were known by said Furlong and Ankiewicz.

45. As a direct result of the feeding and ingesting of said ingredients, Bill began having trouble breathing and shortly thereafter lost consciousness.

46. Bill was transported to the Hospital, where he was pronounced dead at 3:14 p.m. on May 9, 2001.

47. Furlong and Ankiewicz, were agents of the Amesbury Middle School, the Amesbury school system and the City of Amesbury, and knew of Bill's severe allergies to nuts and seeds and further, that the ingesting of these products would likely result in Bill's death.

48. Bill's death, as stated in the Chief Medical Examiner's report, is a direct result of ingesting foods that were cooked by and fed to him by Furlong and Ankiewicz, which contained a variety of nuts at seeds.

49. The acts of Furlong and Ankiewicz were at the very least negligent for which the City of Amesbury is responsible and liable.

WHEREFORE, pursuant to G.L.c. 258, § 2, the Plaintiffs pray for judgment against the Defendant, Nicholas Costello in his capacity as the City of Amesbury, for the wrongful death of William J. Gallagher and award damages and costs in an amount deemed just and reasonable.

B.  **Emotional Distress**

The Plaintiffs restate Paragraphs 1 through 49 of the Complaint and incorporate them herein by reference.

50. As a result of the Assault and Battery as alleged in Count II & III, Defendants Furlong and Ankiewicz, caused Bill's death.

51. As a direct result of the feeding and ingesting of said ingredients, Bill began having trouble breathing and shortly thereafter lost consciousness.

52. A School administrator immediately called Bill's mother, Susan Gallagher ("Sue"), and alerted her to the fact that Bill was not well and that the situation required that she come to the School immediately.

53. Upon arriving at the School, Sue encountered an ambulance parked in front of School, which she parked directly behind. She also observed her son, Bill, being wheeled from the School to the ambulance on a stretcher, while being attended to by EMTs.

54. Sue requested to drive in the ambulance with her son, but was told she could not.

55. Sue got in her car and followed immediately behind the ambulance for the entire ride to the hospital.

56. Sue noted that Bill was positioned on the left side of the ambulance and his EMT attendant was seated to the right side of the ambulance.

57. While following the ambulance Sue had a clear vision of the activity within the ambulance.

58. At some point after leaving the School and arriving at Anna Jacques Hospital, Newburyport, MA ("Hospital"), Sue noticed the EMT jump from his seated position.

59. Sue observed the EMT assume a bent position over Bill and began a pumping motion, which Sue believed to be CPR.

60. The EMT continued this activity throughout the remainder of the drive to the Hospital.

61. Upon arriving at the Hospital, Bill was rushed into the emergency room, while EMTs continued to perform emergency treatment to him.

62. Sue followed her son and his medical attendants into the emergency room, where she witnessed the Hospital's emergency medical team treat her son and where she John to update him of the

7

situation.

63. Although Sue stepped out of the emergency treatment room several times to answer medical personnel's questions she remained, for the most part, in the treatment room observing her son receive emergency treatment by various hospital personnel.

64. Sue stated numerous times to the emergency personnel not to stop "working" on her son.

65. Bill's father, John, arrived at the Hospital and entered the emergency room where Bill was being treated.

66. John and Sue continued to observe, from Bill's room, the Hospital's emergency personnel perform emergency treatment to Bill.

67. Several minutes after John arrived at the Hospital, while he and Sue watched the Hospital personnel administer emergency treatment to their son, the medical team stopped treating Bill and their son was pronounced dead, in their presence, at 3:14 on May 9, 2001.

68. Bill's death, as stated in the Chief Medical Examiner's report, is a direct result of ingesting foods that were cooked by and fed to him by his teacher and aide, which contained a variety of nuts at seeds.

69. Bill's sisters, Haley and Kelly were in attendance at the School when they heard the ambulance sirens

70. Haley and Kelly became aware that the ambulance had arrived to attend to their brother.

71. The knowledge of and witnessing of the suffering and ultimate death of Bill by his parents, Susan and John, created severe emotional distress.

72. The knowledge of Bill's suffering and ultimate death by his sister's, Haley and Kelly, created severe emotional distress.

73. The extreme and outrageous conduct of the Defendant's Ankiewicz and Furlong in feeding Bill nuts, knowing full well that the feeding of nuts would more likely than not result in death, indicated that the Defendant's intended to cause or at the very least should have known their conduct would cause the Plaintiffs' emotional distress and in fact their conduct caused the Plaintiffs severe emotional distress.

WHEREFORE, the Plaintiffs pray for judgment against the Defendants Nicholas Costello in his

capacity as the City of Amesbury, for the infliction of severe emotional distress and award damages and costs in an amount deemed just and reasonable.

## COUNT II
### Personal Liability of Margaret Furlong under G.L.c. 258, § 10(c)
### The Intentional Tort of Assault and Battery

The Plaintiffs restate Paragraphs 1 through 73 of the Complaint and incorporate them herein by reference

74. Furlong, Bill's teacher, knew of Bill's severe allergies to nuts and seeds and further, that the ingesting of these products would likely result in Bill's death.

75. On or about May 9, 2001, while attending a regularly scheduled home economics/life skills/cooking class, at the School, contrary to stated, obvious and otherwise cautionary documentation, Bill was fed by Furlong and by such feeding he was caused to ingest a variety of foods containing nut and seed ingredients, which earlier medical records, provided to the school by his parents, indicated clearly and without ambiguity that he was severely allergic to such nuts and seeds, and that such facts were known by said Furlong.

76. As a direct result of the feeding and ingesting of said ingredients, Bill began having trouble breathing and shortly thereafter lost consciousness.

77. Bill was transported to the Hospital where he was pronounced dead at 3:14 p.m. on May 9, 2001.

78. The actions of the Defendant, Furlong, in hand feeding Bill the nuts and seeds were specific, unpermitted and intentional acts, which acts caused death to Bill.

79. The feeding of the nuts and seeds to Bill was an intentional act, an unpermitted touching, which act and touching amounted to an Assault and Battery upon Bill and resulted in his death.

80. The Defendant, Furlong, committed an unpermitted act, i.e., the feeding of the nuts and seeds to Bill, knowing that to do so would likely cause serious harm or death, and said unpermitted act was an Assault and Battery upon Bill.

81. The obligations of care custody and safety of the deceased William Gallagher was entrusted to the Defendant, Furlong, and notwithstanding said obligation committed an intentional tort, to

wit, an assault and battery.

82. All of the actions complained of, by virtue of G.L.c. 258, § 10c, exempt said Defendant, Furlong, from the immunity granted by G.L.c. 258, § 2.

WHEREFORE, the Plaintiffs pray for judgment against the Defendant, Margaret Furlong, for the intentional infliction of an Assault and Battery causing death and award damages and costs in an amount deemed just and reasonable.

## COUNT III
### Personal Liability of Katherine J. Ankiewicz under G.L.c. 258, § 10(c)
### The Intentional Tort of Assault and Battery

The Plaintiffs restate Paragraphs 1 through 82 of the Complaint and incorporate them herein by reference

83. Ankiewicz who was Furlong's Aide, knew of Bill's severe allergies to nuts and seeds and further, that the ingesting of these products would likely result in Bill's death.

84. On or about May 9, 2001, while attending a regularly scheduled home economics/life skills/cooking class, at the School, contrary to stated, obvious and otherwise cautionary documentation, Bill was fed by Ankiewicz and by such feeding he was caused to ingest a variety of foods containing nut and seed ingredients, which earlier medical records, provided to the school by his parents, indicated clearly and without ambiguity that he was severely allergic to such nuts and seeds, and that such facts were known by said Ankiewicz.

85. As a direct result of the feeding and ingesting of said ingredients, Bill began having trouble breathing and shortly thereafter lost consciousness.

86. Bill was transported to the Hospital where he was pronounced dead at 3:14 p.m. on May 9, 2001.

87. The actions of the Defendant, Ankiewicz, in hand feeding Bill the nuts and seeds were specific, unpermitted and intentional acts, which acts caused death to Bill.

88. The feeding of the nuts and seeds to Bill was an intentional act, an unpermitted touching, which

act and touching amounted to an Assault and Battery upon Bill and resulted in his

89. The Defendant, Ankiewicz, committed an unpermitted act, i.e., the feeding of the nuts and seeds to Bill, knowing that to do so would likely cause serious harm or death, said unpermitted act was an Assault and Battery upon Bill.

90. The obligations of care custody and safety of the deceased William Gallagher was entrusted to the Defendant, Ankiewicz, and notwithstanding said obligation committed an intentional tort, to wit, an assault and battery.

91. All of the actions complained of, by virtue of G.L.c. 258, § 10c, exempt said Defendant, Ankiewicz, from the immunity granted by G.L.c. 258, § 2.

WHEREFORE, the Plaintiffs pray for judgment against the Defendants, Katherine J. Ankiewicz, for the intentional infliction of an Assault and Battery causing death and award damages and costs in an amount deemed just and reasonable.

## COUNT IV
### Personal Liability of Margaret Furlong Based upon G.L.c. 258, § 10(c)
### Claim of Intentional Infliction of Emotional Distress

The Plaintiffs restate Paragraphs 1 through 91 of the Complaint and incorporate them herein by reference.

92. The Defendant, Furlong, committed an unpermitted act, i.e., the feeding of the nuts and seeds to Bill, knowing that to do so would likely cause serious harm or death, said unpermitted act was an Assault and Battery upon Bill.

93. The obligations of care custody and safety of the deceased William Gallagher was entrusted to the Defendant, Furlong, and notwithstanding said obligation committed an intentional tort, to wit, an assault and battery, and thereby and pursuant thereto, did cause the infliction of intentional emotional distress.

94. The Plaintiff, Susan Gallagher, suffered and continues to suffer emotional distress as a result of the negligence acts of Furlong in feeding her son food containing nuts and seeds, causing Bill's death.

11

95. The Plaintiff, John J. Gallagher, suffered and continues to suffer emotional distress as a result of the negligence acts of Furlong in feeding his son food containing nuts and seeds, causing Bill's death.

96. The Plaintiff, Haley Gallagher, suffered and continues to suffer emotional distress as a result of the negligence acts of Furlong in feeding her brother food containing nuts and seeds, causing Bill's death.

97. The Plaintiff, Kelly Gallagher suffered and continues to suffer emotional distress as a result of the negligence acts of Furlong in feeding her brother food containing nuts and seeds, causing Bill's death.

98. All of the actions complained of, by virtue of G.L.c. 258, § 10(c), exempt said Defendant, Furlong, from the immunity granted by G.L.c. 258, § 2.

WHEREFORE, the Plaintiffs pray for judgment against the Defendant, Margaret Furlong, for the intentional infliction of emotional distress and that the Court award damages and costs in an amount deemed just and reasonable.

## COUNT V
### Personal Liability of Katherine J. Ankiewicz Based upon G.L.c. 258, § 10(c)
### Claim of Intentional Infliction of Emotional Distress

The Plaintiffs restate Paragraphs 1 through 98 of the Complaint and incorporate them herein by reference.

99. The Defendant, Ankiewicz, committed an unpermitted act, i.e., the feeding of the nuts and seeds to Bill, knowing that to do so would likely cause serious harm or death, said unpermitted act was an Assault and Battery upon Bill.

100. The obligations of care custody and safety of the deceased William Gallagher was entrusted to the Defendant, Ankiewicz, and notwithstanding said obligation committed an intentional tort, to wit, an assault and battery, and thereby and pursuant thereto, did cause the infliction of intentional emotional distress.

101. The Plaintiff, Susan Gallagher, suffered and continues to suffer emotional distress as a result of

the negligence acts of Ankiewicz in feeding her son food containing nuts and seeds, causing Bill's death.

102. The Plaintiff, John J. Gallagher, suffered and continues to suffer emotional distress as a result of the negligence acts of Ankiewicz in feeding his son food containing nuts and seeds, causing Bill's death.

103. The Plaintiff, Haley Gallagher, suffered and continues to suffer emotional distress as a result of the negligence acts of Ankiewicz in feeding her brother food containing nuts and seeds, causing Bill's death.

104. The Plaintiff, Kelly Gallagher, suffered and continues to suffer emotional distress as a result of the negligence acts of Ankiewicz in feeding her brother food containing nuts and seeds, causing Bill's death.

105. All of the actions complained of, by virtue of G.L.c. 258, § 10c, exempt said Defendant, Ankiewicz, from the immunity granted by G.L.c. 258, § 2.

WHEREFORE, the Plaintiffs pray for judgment against the Defendant, Kathleen J. Ankiewicz, for the intentional infliction of emotional distress and that the Court award damages and costs in an amount deemed just and reasonable.

## COUNT VI
### Personal Liability of Margaret Furlong and Katherine J. Ankiewicz
### Loss of Consortium

The Plaintiffs restate Paragraphs 1 through 105 of the Complaint and incorporate them herein by reference.

106. Bill was a 16 year old special needs student at the Amesbury Middle School, Amesbury, Massachusetts, covered by the Americans with Disabilities Act/ Individuals with Disabilities Education Act and Public Law 93-112, The Rehabilitation Act of 1973 and G.L.c. 258, *et seq.*

107. Susan Gallagher continues to suffer the loss of consortium as a result of the City of Amesbury's, the Amesbury School System's, the Amesbury Middle School's principal's, special education

director's, teacher's and aid's failure to create a policy for food-allergic students and their negligent act and/or willful, reckless and wanton act of feeding her son food containing nuts and seeds.

108. John J. Gallagher continues to suffer the loss of consortium as a result of the City of Amesbury's, the Amesbury School System's, the Amesbury Middle School's principal's, special education director's, teacher's and aid's failure to create a policy for food-allergic students and their negligent act and/or willful, reckless and wanton act of feeding her son food containing nuts and seeds.

109. Haley Gallagher continues to suffer the loss of consortium as a result of the City of Amesbury's, the Amesbury School System's, the Amesbury Middle School's principal's, special education director's, teacher's and aid's failure to create a policy for food-allergic students and their negligent act and/or willful, reckless and wanton act of feeding her son food containing nuts and seeds.

110. Kelly Gallagher continues to suffer the loss of consortium as a result of the City of Amesbury's, the Amesbury School System's, the Amesbury Middle School's principal's, special education director's, teacher's and aid's failure to create a policy for food-allergic students and their negligent act and/or willful, reckless and wanton act of feeding her son food containing nuts and seeds.

111. Not withstanding the above, each of the named individuals has a separate claim and to the extent permitted by law alleges a separate claim; however, if not permitted brings their claims by said Co-Administrators.

112. All of the allegations are incorporated in the Claim by Susan Gallagher and John J. Gallagher as Co-Administrators.

113. All of the actions complained of, by virtue of G.L.c. 258, § 10c, exempt said Defendants, Furlong and Ankiewicz, from the immunity granted by G.L.c. 258, § 2.

WHEREFORE, the Plaintiffs pray for judgment against the Defendants for the Loss of Consortium, caused by the Assault and Battery of the Defendants Margaret Furlong and Kathleen J. Ankiewicz, and their failure to perform their duty to act with reasonable care to prevent harm to another

14

as required by law; and their intention infliction of emotional distress and that the Court award damages and costs in an amount deemed just and reasonable.

## COUNT VII

### Personal Liability of Margaret Furlong based upon her exercise of a discretionary function under G.L.c. 258§ 10(c)

The Plaintiffs restate Paragraphs 1 through 113 of the Complaint and incorporate them herein by reference.

114. The City of Amesbury through the School Department failed to have in place a policy regarding the precautions relating to the ingestion of nuts and seeds by children allergic to said food; methods of prevention of the ingestion of nuts and seed by allergic students thereof, and any other system or policy related to the introduction and/or ingestion by students allergic thereto.

115. The Defendant, Furlong, by the failure of the City of Amesbury to have in place a policy, used her discretion in matters relating to and the issues raised in the above paragraph 122.

116. All of the actions of the Defendant, Furlong, as previously alleged are incorporated herein by reference as if fully set forth.

117. By virtue of having discretionary power the Defendant, Furlong, was exempt from the provisions of G.L.c. 258 § 2 by virtue of G.L.c. 258 § 10(b).

118. The Defendant, Furlong, acted at least negligently in the feeding of the nuts and seeds to Bill

WHEREFORE, the Plaintiffs pray for judgment against the Defendant, Furlong, for her negligence, which constituted an abuse of her discretion in the guidance, care and feeding of the Plaintiff Bill, which said abuse of discretion led to the death of Bill.

## COUNT VIII

### Personal Liability of Katherine J. Ankiewicz based upon her exercise of a discretionary function under G.L.c. 258§ 10(c)

The Plaintiffs restate Paragraphs 1 through 118 of the Complaint and incorporate them herein by reference.

119. The City of Amesbury through the School Department failed to have in place a policy regarding the precautions relating to the ingestion of nuts and seeds by children allergic to said food; methods of prevention of the ingestion of nuts and seed by allergic students thereof, and any other system or policy related to the introduction and/or ingestion by students allergic thereto.

120. The Defendant, Ankiewicz, by the failure of the City of Amesbury to have in place a policy, used her discretion in matters relating to and the issues raised in the above paragraph 127.

121. All of the actions of the Defendant, Furlong, as previously alleged are incorporated here by reference as if fully set forth.

122. By virtue of having discretionary power the Defendant, Ankiewicz, was exempt from the provisions of G.L.c. 258 § 2 by virtue of G.L.c. 258 § 10(b).

123. The Defendant, Ankiewicz, acted at least negligently in the feeding of the nuts and seeds to Bill

WHEREFORE, the Plaintiffs pray for judgment against the Defendant, Ankiewicz, for her negligence, which constituted an abuse of their discretion in the guidance, care and feeding of the Plaintiff Bill, which said abuse of discretion led to the death of Bill.

## COUNT IX

### Americans with Disabilities Act (42 U.S.C., § 12132); The Rehabilitation Act of 1973 (29 U.S.C., § 504); Individuals with Disabilities Education Act (IDEA) (20 U.S.C., § 1400); and G.L. c. 258, *et seq.*

The Plaintiffs restate Paragraphs 1 through 123 of the Complaint and incorporate them herein by reference.

124. The Defendants' have violated Americans with Disabilities Act (42 U.S.C.); Individuals with Disabilities Education Act (20 U.S.C., Public Law 93-112), (IDEA); The Rehabilitation Act of 1973 and G.L. c. 258, *et seq*, by failing to have in place a formal written plan, signed by school staff, Bill's parents and Bill's physician, which offered everyone a clear understanding of what they were expected to do in order to help any student **AVOID** an allergic reaction and how to react quickly in case of a medical emergency. Without such a plan employees were required to use discretionary judgment, which, in this case, was grossly inadequate and abusive of their

16

discretion.

125. The requirements of the specific statutes and laws enumerated in paragraph 132 provide largely the same protection and use the same standards when dealing with the issues presented in this Count.

126. Bill was denied the benefits of a free, adequate public education by virtue of the acts of all named defendants.

127. The City of Amesbury, through its Mayor Nicholas Costello, failed to establish and maintain procedures to ensure that children, like Bill, with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies.

WHEREFORE, the Plaintiffs pray for judgment against all named Defendants for violation of the Americans with Disabilities Act (42 U.S.C.); Individuals with Disabilities Education Act (20 U.S.C., Public Law 93-112), (IDEA); The Rehabilitation Act of 1973 and G.L. c. 258, *et seq*.

## COUNT X
### Liability of all Defendants under 42 U.S.C., § 1983

The Plaintiffs restate Paragraphs 1 through 135 of the Complaint and incorporate them herein by reference.

128. "Every person, who under color of any statue, ordinance, regulation, custom, or usage ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured." (See, 42 U.S.C., § 1983)

129. All of the actions asserted in prior paragraphs were undertaken under color of state and federal law. Each of the Defendants are officials or employees of the City of Amesbury or of its public school system and their acts or omissions as listed heretofore deprived Bill of a federally secured right, i.e., to a free and appropriate public education.

130. The deprivation of Bills civil rights and the acts and omissions which caused his death, terminated immediately any remedy to which Bill and his parents may have been entitled under

17

the above-recited statutes.

131.  Any requirement of exhaustion of administrative procedures was not required as any administrative remedies afforded by the above-mentioned statutes are inadequate and futile as a legal and practical matter.

WHEREFORE, the Plaintiffs pray for judgment against all named Defendants for violating the civil rights and award monetary and punitive damages in accordance with 42 U.S.C., § 1983.

## COUNT XI

### Constitutional Rights of the Plaintiffs to a Complete Trial by Jury

The Plaintiffs restate Paragraphs 1 through 131 of the Complaint and incorporate them herein by reference.

132.  The Constitution of the Commonwealth of Massachusetts, Article 15, "In all controversies concerning property, and in all suites between two or more persons, except in cases which it has heretofore been otherways used and practiced, the parties have a right to a trial by jury and this method shall be held sacred ..." grants to everyone in matters involving money judgments the right to a trial by jury.

133.  The Massachusetts Legislature, G.L.c. 258, § 2 has impinged upon the plaintiffs right to a trial by jury by preventing suit against the wrong doer and limiting the amount of damage that a person may recover, regardless of the proof of damages which exceed the cap.

WHEREFORE, the Plaintiffs demand that this Court find that G.L.c. 258 § 2 is unconstitutional and permit the Plaintiffs to proceed to prove actual damages sustained.

## COUNT XII

### Pre-emption of G.L.c. 258, § 2

The Plaintiffs restate Paragraphs 1 through 133 of the Complaint and incorporate them herein by reference.

134.  There are several Federal Statutes heretofore named, each of which the Plaintiffs allege have been

violated by all or some of the Defendants.

135. These statutes supercede any lesser requirements of G.L.c. 258 *et seq.*

136. 42 U.S.C. § 1983 specifically provides for monetary damages for any violations, as described in Count X.

137. No monetary cap can supercede the sanctions imposed by 42 U.S.C. § 1983

WHEREFORE the Plaintiffs demand that this Court permit them to introduce evidence which would tend to establish damages in access of the monetary cap established by G.L.c. 258 § 2.

**All counts are for the same action**

## THE PLAINTIFFS DEMAND A TRIAL BY JURY, ON ALL COUNTS, SO FAR AS THE SAME IS A RIGHT BY STATUTE, INCLUDING BUT NOT LIMITED TO G.L.c. 231 § 103, A CUSTOM, AND/OR A LEGAL PRECEDENT

Dated: September 22, 2004

Plaintiff,
By their Attorney,

*[signature]*

Anthony M. Fredella
34 Atlantic Street
Gloucester, MA 01930-1625
Telephone: 978-281-5393
Fax: 978-282-4384
B.B.O. No.: 178160

19